## OPERATION OF JUNK YARDS WITHIN CORPORATE LIMITS.

Common Pleas Court of Ashland County.

SAMUEL L. GRUNDSTEIN *v.* CITY OF ASHLAND; and EDWARD LAUGHERY *v.* SAMUEL L. GRUNDSTEIN.

Decided, 1925.

*Nuisance—Junk Yards cannot be so Denominated unless Circumstances Make Them Such—Determination as to Nuisances is a Judicial and not a Legislative Function.*

1. Whether a specific act or thing constitutes a nuisance is largely dependent upon surrounding circumstances and is a matter for judicial determination.

2. Maintenance or operation of a junk yard does not *per se* constitute a nuisance, notwithstanding a declaration to that effect by a municipal council.

3. Injunction lies and is granted in this case against the dismantling or breaking up of machinery, automobiles, boilers or heavy pieces of metal or pipe, or the permitting or continuing of unusual noises, or the storing of junk, rags, hair or paper beyond a reasonable time for its removal, on a lot directly opposite residence property; but as to a parcel two hundred feet further removed and almost entirely surrounded by property owned and used for manufacturing and similar purposes, an injunction is refused.

*Ben F. Levison* and *Olive Farber,* for Grundstein.

*Coyl C. Huffman,* City Solicitor, and *C. C. Chapman,* for Laughery.

GRAVEN, J.

The two cases were consolidated and tried in the sequence stated by the court upon its own motion, deeming it necessary to determine the issues of the first cause, it being apparent, that if the ordinances complained of in the first cause are valid, they constitute an easy, effective and adequate remedy for the things complained of in the second cause; namely, the wrongful, unlawful and injurious operation of a junk yard and junk business within the corporate limits of the city of Ashland.

The petition in the first cause, alleges the passage and adoption of an ordinance by the council of said city, May 5, 1925, entitled. "Prohibiting junk dealers from operating within the city limits of Ashland, Ohio." And providing as follows:

"Sec. 1. That it shall be unlawful from and after the passage of this ordinance for any person, corporation or partnership, to conduct a junk yard within the city limits of Ashland, Ohio.

"Sec. 2. Any person, either in the capacity of owner, agent or manager, or employee of any person or corporation, who violates the provisions of this ordinance shall be fined not more than $100.00 for the first offense and not more than $500.00 for the second offense, and each day shall constitute a second offense.

(Repealing former ordinance of regulatory purport).

"Sec. 3. That this ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, safety and property of the inhabitants of the city of Ashland, Ohio, and shall take effect and be in force from and after its passage and approval by the mayor, and its publication."

Plaintiff alleges that for some time he has been operating a junk yard in said city, has made improvements and made large expenditures necessary for the conduct of his business; that he is threatened with arrest and prosecution under said ordinance, He alleges that said ordinance is unlawful and asks the court to declare said ordinance invalid and restrain its enforcement.

To the petition a general demurrer was interposed, thus raising the legal issues: Is the operation of a junk yard a nuisance *per se* or in and of itself, or can the council of the city of Ashland by legislative action so declare a junk yard a nuisance, or is such a pronouncement with the province of the courts dependent upon the attendant circumstances in the particular case.

What is a nuisance? Offers some difficulty of definition. One frequently quoted is: "A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either damages, injures or endangers the comfort, repose, health or safety of others, offends decency, or in any way renders other persons insecure in life or in the use of property." It must be more than a tendency. It must be tangible, appreciable, actual, measureable.

"Anything wrongfully done or permitted which injures another in the enjoyment of his legal rights." (38 O. S., 448).

Nowhere do we find judicial authority of any strength defining and declaring the junk or junk yard business a nuisance within and of itself. Nor is there anything statutory that brands it in any way as an outlaw business, and any statutory restrictions or exactions are under the assumed necessity of police power or regulation. Nor is the business, as a business, within the scope of the so-called police power. And in line therewith it should be constantly borne in mind, however, that to justify the state, city or municipality in interposing its authority in behalf of the public, it must appear first, that the interests of the public generally, as distinguished from those of a particular class requires such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not duly oppressive upon individuals.

The Legislature or the city council may not under the guise of protecting the public interests, arbitrarily interfere with private business and interpose unusual and unnecessary restrictions upon lawful occupations or business. The law will not allow the rights of property to be invaded under the guise of protection when it is manifest that such is not the object and purpose of the regulation.

As a general proposition, courts will not interfere in purely discretionary matters or purely legislative functions of a city council or legislative body, and rarely will interfere to enjoin legislation but will consider and adjudicate legislation, if passed, except as to legislation clearly *ultra vires,* or to protect private rights that would be prejudiced without fault of those having the rights, and generally a court of equity has no jurisdiction against an invalid ordinance until an attempt is made to enforce its terms.

Decisions of the courts are almost uniformally in harmony with the conclusion so tersely expressed in *Deming* v. *Cleveland,* 22nd O. C. C. (N. S.) 198:

"The question of what amounts to a public nuisance is a judicial and not a legislative question, and the declaration of neither the Legislature nor of the council of a municipal corporation can make a thing a public nuisance if it is not one in fact."

The demurrer to the said petition was sustained, and thereby the purported ordinance: "prohibiting junk dealers from operating within the city limits of Ashland, Ohio," was declared invalid, void and of no effect.

The court holding thus, then proceeded to the hearing of the second case, No. 18269, the pleadings of which raise the issues that the defendant is engaged in the junk business upon a lot adjoining plaintiff's lot and upon another lot cornering at the north-east corner with the first lot occupied by the defendant; that the conditions occasioned by the junk business will expose plaintiff and his family in the enjoyment of their home to an unhealthy atmospheric condition; that the wrecking of old machines thereon will be a continued noise; that trucks going to and from said junk yards will expose plaintiff to inconvenience and danger in traveling from his residence to his work and to the main part of Ashland. All of which alleged grievances are denied by the defendant.

Temporary restraining orders were allowed and plaintiff prays that defendant may be permanently enjoined from operating a junk business in said locations.

The conceded facts and conditions are: Ohio street is a paved thoroughfare running approximately west from Cottage street. Willow street is unimproved and runs from Ohio street north several hundred feet and joins Erie street in the middle of the H. V. E. Lumber Company's plant and yards. Defendant's first lot fronts fifty feet on Ohio street and extends one hundred and thirty-five feet north on the south side of Willow street to a twelve-foot alley running from Willow street west. Plaintiff's lot fronts on Ohio street thirty feet and runs about one hundred and thirty-five feet to said alley and sides or joins defendant's first lot on the south. Defendant's west line running about four feet from plaintiff's residence. Plaintiff's terrace apparently overhangs and his grape arbor, garden and garage drive at the rear extends several feet on defendant's first lot. The lumber company's mill plant, yards and sheds are across the twelve-foot alley north and at the rear of plaintiff's and defendant's lots. East of Willow street and fronting on Ohio street are first two residence lots, side track

and the plant of the Elite Manufacturing Company, all owned by the said Elite Company. The twelve-foot alley before mentioned is vacated east of Willow street and is included in defendant's second lot. Defendant's second lot begins about one hundred and thirty-five feet north from Ohio street and on the east side of Willow street and is about one hundred and twenty feet square, and bounded on the north by the lumber company, east by Elite Company's side track and vacant lot to the Erie Railroad, south by the Elite Company plant and two residence lots, west by Willow street. Both defendant's first and second lots are owned by the Elite Manufacturing Company and are under lease to the defendant. Prior to the filing of this cause and the granting of temporary restraining order, defendant occupied and used what we have herein termed his second lot, i. e. rear lot, for the accumulation, sorting, cutting or breaking up and shipment of junk and the burning of the refuse. On defendant's first lot, fronting on Ohio street, he had erected a small office building, was enclosing the lot within a picket fence, and had set the cement corner and medial pillars for the erection of a garage of some size for his use, that several junk automobiles had been wrecked and dismantled, and that he proposed to erect a truck or wagon scale on said lot.

Plaintiff's evidence was to the effect that hammers and sledges were used in the wrecking of the automobiles, and that oxyacetylene torches were used in the wrecking process causing dense smoke and noxious odors and rendering the locality dangerous from the possibility of explosion of the tanks used in the cutting and burning operations, and that plaintiff suffered a substantial depreciation in the value of his property by the faults of the defendant. All of which testimony was controverted and denied by the defendant.

The first question for determination is whether the plaintiff has a complete and adequate remedy at law, or are the issues raised such as will require the intervention of a court of equity. Or in other words, is plaintiff's redress in damages for a tort or for the abatement of a nuisance, both or either.

Referring to Pomroy's Equity Jurisprudence, Vol. 4, Section 1357:

"If a trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. The principle determining the jurisdiction, embraces two classes of cases and may be correctly formulated as follows:

"1. If the trespass, although a single act, is or would be destructive, if the act is or would be irreparable, that is, if the injury done or threatened is of such a nature that, when accomplished the property cannot be restored to its original condition, or cannot be replaced, by means of compensation in money, then the wrong will be prevented or stopped by injunction.

"2. If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act, if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases, the criterion is the inadequacy of the legal remedy.

"Note—The legal remedy is not adequate simply because a recovery of pecuniary damages is possible. It is only adequate when the injured party can by one action at law, recover damages which constitute a complete and certain relief for the whole wrong; a relief virtually as efficient as that given by a court of equity. This conclusion is sustained by the consensus of modern decisions of the highest authority * * *. It is certain that many trespasses are not enjoined which if committed, would fall short of destroying the property or of rendering its restoration to its original condition impossible. The injunction is granted, not merely because the injury is essentially destructive but because, being continuous or repeated, the full compensation for the entire wrong cannot be obtained in one action at law for damages."

Now, consider the allegations and denials, the admitted facts and the evidence.

The plaintiff is not seeking specific damages, nor can his wrongs, if any he has suffered, be reduced to one proposition which if compensated would make him whole; then let us consider the proposition of a nuisance and see how we work out on that theory.

Our own Supreme Court recognized some difficulty in the proposition and went to some length in *Eller* v. *Koehler*, 68 O. S., 55, to clarify it.

"The term 'nuisance' signifies anything that causes hurt, inconvenience, annoyance or damage to another. If a thing done causes either of these in *any* degree, the person creating it must be chargeable for the consequences." This is a too literal interpretation of a very old definition of a nuisance; for it has always been the law that in order to subject one to an action for nuisance, the injury must be material and substantial. It must not be a mere figment of the imagination. It must be tangible. In *Columbus Gas etc. Company* v. *Freeland,* 12 O. S. 392, this court settled this question for the state in the following definite resolution: 'What amount of annoyance or inconvenience will constitute a nuisance, being a question of degree, dependant upon varying circumstances cannot be precisely defined. * * * In the holding that what constitutes a nuisance cannot be comprehended in an all inclusive definition because of ever varying circumstances which may make that a nuisance in one case which is not in another, this merely embodied in terse phrase the universal experience of the court. Only conduct which is a nuisance *per se* is at all times and under all circumstances a nuisance, although there are some lawful trades and modes of using property which by reason of unavoidable noxiousness and offensiveness, are *prima facie* nuisances. But the fact that a certain business is *prima facie* a nuisance does not relieve the complainant of the necessity of proving that the business is in fact a nuisance and that he has sustained an actual and substantial damage therefrom. It scarcely needs to be pointed out that the circumstance of contiguity will enter largely into such an inquiry along with other facts and circumstances. * * *. 'In determining the question of nuisance from noise or vibration, reference is always to be had to the locality, the nature of trade or use of the property producing it, the time during which it exists, the intensity of the noise, and the effects produced thereby. No definition can be given that is applicable to every given case, as each must necessarily stand by itself and be determined by the jury, with reference to the circumstances peculiar to itself, etc.' (Wood on Nuisance, Sec. 638, 639). Whether it be a case of injuries to real property or a case of personal annoyance and inconvenience, or of interference with the comfort of one's property, or whether the question be as to the existence of a nuisance or as to the extent of the alleged injury or as to whether the defendant's act caused the injury, and though the inquiry be before the chancellor or jury, the contiguity of the alleged nuisance to the plaintiff's property and the nature of the vicinage is always a pertinent circumstance to be considered. The matter of lo-

cality may be of much or little weight in arriving at a conclusion. Nevertheless the parties have the right to have the controversy heard and determined with all the light, locality may throw upon it. The mutual interests of urban populations require this. For example, if one unnecessarily erects, maintains and operates a noisy, smoky machine shop or rolling mill in the midst of a section of a city or town already wholly given up to residences, possibly many of them of elaborate design and great cost, there would be less excuse for the offender in so using his own propery than if he had chosen a place which had been wholly or in part given up to trade and manufacturers. All that can be required of men who engage in lawful business is that they regard the fitness of the locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand, one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. The true rule would be that any discomfort or injury beyond this would be actionable; anything up to that point would not be actionable. * * *.''

The plaintiff's petition alleges future apprehensions, alleges that defendant will do this and do that, all of which he alleges, as aforesaid, will be to plaintiff's injury as to his health and comfort and the enjoyment of his home and property, and which will work a hurt, damage and depreciation upon his property.

The proposition thus raised are ably and exhaustively considered in Pomroy's Equitable Remedies, Chapter 24, Sections 523 and 524.

"In one sense all injunctions against nuisances are injunctions against threatened nuisances. The only purpose of giving relief at all is the prevention of future harm; but this harm being future cannot be a matter of absolute certainty and therefore is only threatened. If, however, at the time the bill is filed, a nuisance is actually being committed, there will, in general, be no question that the threatened danger is sufficiently made out to justify an injunction, if the case in its other aspects, is sufficient. But when the nuisance has not yet come into existence and the plaintiff, therefore, must make out his case

of apprehended danger by other means than by pointing to
an existing nuisance, a question may be raised concerning
the rule by which the court is to be guided. What is believed
to be a proper statement of these rules was thus formulated in
a leading English case:

"'There must, if no actual damage is proved, be proof of
imminent danger, and there must also be proof that the ap-
prehended statement will, if it comes, be very substantial.
I should almost say, it must be proved that it will be irreparable,
because if the danger is not proved to be so imminent that
no one can doubt that if the remedy is delayed, the damage
will be suffered. I think it must be shown that, if the damage
does occur, at any time, it will come in such a way and under
such circumstances that it will be impossible for the plaintiff
to protect himself against it, if relief is denied to him in a
*quia timet* action. In a word, the threatened danger must be
imminent, and of a character to do irreparable injury.'
\*  \*  \*  (524).

"In accordance with these rules it is held that a thing which
may or may not be a nuisance, according to the way it is
managed or controlled when in use will not be enjoined. The
plaintiff, by showing only the intended construction or use of
the thing complained of, does not meet the burden of proof
that is on him. The presumption being that a person entering
into a legitimate enterprise or undertaking will conduct it in
a proper way so that it will not constitute a nuisance. Hence,
injunction has been refused against the erection of a stable
or a planing mill or a cotton gin, or a jail, or a coal chute, the
building of a dam or an embankment, the opening of a gas
well, the establishment of a private burial ground, the opera-
tion of a business as a slaughter house or a dairy, the discharge
of sewage on the plaintiff's lands, etc., etc. \*  \*  \* . In
every case the complained of project or business may be done
in a manner that will cause no harm to the plaintiff and the
mere fact that it is to be done is no proof that it will be done
wrongfully.

"But if the plaintiff can show that the thing complained of
will probably be a nuisance to him, he is entitled to an in-
junction appropriately framed to protect his right that is
threatened. Thus, if a structure is to be erected, and the plain-
tiff can show that it is to be used in such a way as will probably
be a nuisance to him, he may have this use enjoined, although
he may not be able to enjoin the erection of the structure,
while if the structure itself, without regard to any use of it,
will cause a nuisance, the injunction will forbid the erection
at all. And if this distinction is sometimes disregarded and

the structure as well as the use of it enjoined, it is doubtless because of the fact that the erection will be useless for any other purpose than the wrongful one; hence, a strict limitation of the scope of the injunction is not very closely observed. * * *. The explanation of this is that most nuisances consist in doing in a wrongful manner something which is not wrongful in itself; hence, until it is actually being done in a wrongful way the plaintiff has so heavy a task in proving the probability of its being so done that in general he cannot meet it. The court will not grant an injunction simply because it will do no harm to the defendant. The plaintiff must show clearly that he stands in need of it."

Within a few days the court recalls, not having the data at hand, our own Supreme Court in passing upon the status of gasoline and oil filling or service stations, as to their being or not being a nuisance in residence or restricted localities, held, substantially, that such stations are not a nuisance of and within themselves and that their location and operation, though in a distinctly residential neighborhood will not be enjoined, unless they are shown to be a nuisance in fact in their particular location or on account of their individual mode of operation.

The court at this point reaffirms its opinion herein before expressed "That a junk yard business is not in and of itself a nuisance."

Proceeding then to the specific facts and conditions alleged by plaintiff as being or about to become a nuisance and all of which are denied by defendant.

That Ohio street and Willow street have been blocked several times by defendant's trucks. The evidence failed to show that said streets were ever seriously conjested by defendant's trucks or by any fault of his and wholly failed to show that plaintiff was in any way injured or inconvenienced thereby.

"The generally accepted rule is that although the nuisance be a public one, yet it is private also, if an individual suffers a special damage thereby, and he may maintain an action and recover his special damage, whether it be direct or only consequential." (*Carrington* v. *Fredericks,* 46 O. S., 447).

"A plaintiff cannot maintain an action against a municipality and others for obstructing a street either in his individual capacity or as an abutter upon the street, unless the nuisance

sought to be abated is personal to him affecting him or his property in a manner different, not merely in degree but in kind, from its effect upon the community in general." *Worthington* v. *Akron*, 18 O. C. C. (N. S.) 208.

The petition then recites that the operation of a junk yard at said location will cause the accumulation of large quantities of old iron, old automobiles, unsanitary rags and paper, will attract vermin and expose plaintiff and family to unhealtful conditions, noxious odors, and subject them to continuous noise and render it dangerous and inconvenient for plaintiff to go to and from his home to work and otherwise will hinder plaintiff and family in the enjoyment of their home.

Naturally these allegations sounding in the future, the testimony was prophetic and speculative and showed, if anything, that a junk yard could be operated in such a manner as to be a real nuisance to plaintiff as well as other residents, and especially so if so conducted upon the lot fronting upon Ohio street.

Relative to the next complaint of plaintiff. "That plaintiff will suffer greatly by way of damages to his property by the location of this junk yard and his having no adequate remedy at law."

The entire evidence offered relative to this contention, summed up, showed that plaintiff would suffer a material loss to his property for residence purposes by the use of the lot fronting upon Ohio street for the junk yard business, but would hardly suffer a loss in the value of his property for business purposes by the location of such yard, if a demand for use of his property for business purposes should arise. However, all of the evidence, consisted of opinions of plaintiff and others and was widely divergent and speculative. The evidence scarce showed any probabilities of depreciation to plaintiff's premises on account of any operation of defendant upon the second lot some one hundred and seventy to two hundred feet distant and almost entirely surrounded by other industrial enterprises and not usually to windward.

In attempting a conclusion in the matters in issue in this case, while its considerations must be primarily focused upon the specific issue between the plaintiff and defendant, never-

theless, the court wishes to avoid being unmindful of the interests and conveniences of any others who, though not parties to the suit may be affected directly or indirectly by the outcome of the suit and any findings the court may make in the matter. The case involving, as it does, questions of health, peace, quiet, safety, the right to own, use, occupy and enjoy property, the public, especially in the approximate vicinity, holds a substantial interest.

During the trial, plaintiff attempted to show that the premises involved were located in an essentially residential section or neighborhood; while the defendant sought to establish the locality as one in which trade and manufacturing enterprises predominated.

The court made two visits to the locality and has endeavored to make a detailed survey of the situation and to view the proposition from all angles.

While in making up the issues in this case, the two lots or parcels used by the defendant were not separated, the court does not see the possibility of considering them together as one.

What the court has heretofore termed the first lot fronts some 60 feet on Ohio street, a street paved with brick and built up, with few exceptions with practical, fair sized modern homes, occupied in the most instances by their owners. On the north side is the property owned and occupied by the plaintiff and defendants. First lot on the north or rear of said lots is a twelve-foot alley and across the alley the sheds, plant and yards of the H. V. E. Lumber Company; on the east Willow street, then two residences and the Elite Manufacturing Company.

The only conclusion the court can come to is that the reasonably expected use for said lot, used by defendants, first lot would be for residence purposes or for some use not inconsistent with the health, peace and safety of the adjacent residents.

The court cannot say that the erection and use by the defendant of an office building, a fence on or around said lot, on or within the lines of said lot, or the erection of a garage or sheds, or the permitting of one or more automobiles or trucks to remain on said lot, or the erection of a scale are in and of themselves inconsistent with the health, peace and safety

of the community, and the court cannot presuppose that all or any of them will be used in such a manner as to constitute a nuisance as the court has defined and limited it, and the court cannot restrain the use of said lot for the said purposes upon the evidence at hand. The court, however, is of the opinion that the use of said lot for the erecting, dismantling, or disassembling of automobiles or the cutting, burning, sorting, and piling and storing of junk or the permitting of junk of any kind in any considerable quantity to accumulate and remain upon said lot beyond a reasonable time in which to remove it, or the making or permitting of any continued unusual amount of noise after or without usual business hours, is inconsistent with the health, peace and safety of plaintiff and the adjacent community.

This lot being in a predominatingly residential neighborhood, the court will be more exacting. The plaintiff and neighbors own or rent their homes which with their families in many instances, represent their all and which they have inviolate rights to enjoy without let or hindrance from any unusual cause. Therefore such enumerated inconsistent uses and any other uses that can reasonably be allied with said abuses will be enjoined.

Consider then the second lot: Its location and surroundings and its conduct and operation as disclosed by the evidence and as apparent to view.

This lot is approximately one hundred and twenty feet square, bounded on the north by the lumber company's yards and plant; on the east by the side track to the Elite Manufacturing Co. and a vacant lot along its entire east side. extending from the side track to the Erie Railroad right of way tracks and side tracks; on the south by the plant and property of the Elite Manufacturing Company and being about one hundred and thirty-five feet north and distant from Ohio street; on the west by Willow street, a public but unimproved thoroughfare, and across said street by the plant sheds and yards of the lumber company.

Thus it will appear that this lot is entirely surrounded by properties owned and used for business enterprises, with little exception. The nearest resident properties to this lot are the residence properties owned by the Elite Manufacturing Company

and they are offering no objections, in fact own said second lot and leased it to said defendant.

The evidence and view does not in any manner show the business now conducted upon said lot and which is sought to be enjoined to be inconsistent with the locality in which it is placed. A court of equity seeks to do equity and justice to all parties who may be directly or indirectly affected whether from their contributing cause or not. The health, peace and safety of the public must be conserved. The owners of the premises have the investment and are chargeable with all taxes and assessments and cost of up-keep and must not be unjustly deprived of a satisfactory lessee and appropriate rentals.

The business and industry of the city must not be subjected to unwarranted restrictions and discriminated against without clear and just cause. The business of the defendant with his established trade, invested capital and presumably satisfactory location must not be discriminated against and his business ordered abated in his present location without clear and convincing evidence of its unfitness, improper conduct or inconsistency with the locality in which it is placed and of its being a real and appreciable menace, injury and nuisance to the plaintiff or the public.

The restraining order prayed for is as to the second lot refused.

Therefore any temporary restraining orders heretofore allowed must be dissolved and defendant may be perpetually enjoined from using the said first lot fronting upon Ohio street for the wrecking, dismantling, or disassembling of automobiles, trucks, machinery, or the cutting, burning, or breaking of the same, or of boilers, pipes, or other large, long or heavy pieces of metal, or the sorting, piling and storing of junk, rags, hair or paper, or permitting junk of any kind in any considerable quantities to accumulate and remain upon said lot beyond a reasonable time in which to remove it, or the making or permitting of any continued, unusual amount of noise after or without usual business hours, or doing anything detrimental to the health, peace and safety of plaintiff and the adjacent community. Costs against the defendant.

To all of which finding, exception may be noted. Motion for a new trial, if made, overruled with exceptions. Appeal bond, fixed at two hundred dollars.